UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ANGELA SUE VANDYKE,
    Plaintiff,

Case No. 18-12502

v.

COMMISSIONER OF SOCIAL
SECURITY ADMINISTRATION,

HON. AVERN COHN

    Defendant.

_____/

## ORDER ADOPTING MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION AND GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT (ECF No. 20)

### I. INTRODUCTION

This is a Social Security case. Plaintiff Angela Sue Vandyke has appealed Commissioner of Social Security's denial of her claim for benefits under the Social Security Act. The case was referred to a magistrate judge ("MJ"). Both parties submitted motions for summary judgment. After reviewing the motions, briefs, and the ALJ decision, the magistrate judge issued a report and recommendation ("MJRR") recommending that the Commissioner's motion for summary judgment be granted, Vandyke's motion for summary judgment be denied, and the ALJ's decision be affirmed. Plaintiff has filed objections to the MJRR and Defendant has filed a response.

For the reasons that follow, the Court overrules Vandyke's objections, and adopts the MJRR, denies Vandyke's motion for summary judgment, grants the Commissioner's motion for summary judgment, and affirms the ALJ's decision denying benefits.

1

## II. BACKGROUND

### A. Procedural History

After Vandyke's application for Disability Insurance Benefits ("DIB") was denied, she timely requested an administrative hearing. After the hearing, the ALJ issued a written decision finding that Vandyke is not disabled under the Act because she could return to her past relevant work as of December 31, 2014, the date she was last insured for disability benefits. The Appeals Council denied review. Vandyke then commenced this action for district court review. Subsequently, Vandyke filed timely objections to the MJ's recommendation (ECF No. 20), which are now before the court.

### B. ALJ Findings and Medical Evidence

The MJRR summarized the ALJ's decision denying benefits:

> Vandyke was 38 years old at the time of her alleged onset date of February 21, 2014, and at 5'5" tall weighed approximately 175 pounds during the relevant time period. She completed high school and some college. She last worked at ACI Plastics as a customer liaison. She was laid off from that job in May 2009. (Prior to working at ACI, she worked as a buyer at MacArthur, and before that she was a lab manager at Water Testing Service.) She now alleges disability primarily as a result of Meniere's Disease with vertigo, atypical migraines, and a pineal brain cyst.
>
> Importantly, Vandyke's date last insured, for purposes of establishing her right to [disability insurance benefits], was December 31, 2014. Following the five-step sequential analysis, the ALJ found that from her alleged onset date of February 21, 2014, through her date last insured of December 31, 2014, Vandyke was not disabled under the Act.
> - At Step One, the ALJ found that Vandyke had not engaged in substantial gainful activity since February 21, 2014 (the alleged onset date).
> - At Step Two, the ALJ found that she had the severe impairments of migraine headaches, episodic vertigo and probable Meniere's disease.
> - Step Three, the ALJ found that Vandyke's impairments, whether considered alone or in combination, did not meet or medically equal a listed impairment.

- The ALJ then assessed Vandyke's residual functional capacity ("RFC"), concluding that she was capable of performing light work, with the following additional limitations: can occasionally climb ramps and stairs, but can never climb ladders, ropes, or scaffolds; can occasionally balance, stoop, crouch, and kneel; can never crawl; must avoid workplace hazards such as unprotected heights or hazardous machinery; and requires that the noise level not exceed loud levels as defined in the Dictionary of Occupational Titles ("DOT").
- At Step Four, the ALJ found that Vandyke was capable of performing her past relevant work as a lab tester and customer service coordinator. As a result, the ALJ concluded that Vandyke was not disabled under the Act.

(ECF No. 19, PageID.565- 567). On appeal, the MJ reviewed the ALJ's decision and found that it was supported by substantial evidence.

### C. *Vandyke's Objections to the MJRR*

Vandyke makes four objections to the MJRR.[1] (ECF No. 20). First, Vandyke claims the ALJ did not give proper weight to Vandyke's testimony about her medical condition and to the calendars she submitted that purported to provide a record of her condition. Second, Vandyke argues that the ALJ not give proper weight to Dr. Zappia's testimony and findings. Third, Vandyke argues the ALJ did not have authority to determine her RFC without a treating physician's opinion. Fourth, Vandyke objects to the ALJ's finding that she can perform "past relevant work" because the ALJ does not account for the accommodations made for her in her previous jobs.

### IV. STANDARD OF REVIEW

---

[1] The Court finds Vandyke's third objection is two different objections and treats them as objections three and four.

This Court has jurisdiction to review the Commissioner's final administrative decision pursuant to 42 U.S.C. § 405(g). Judicial review under this statute is limited in that the court "must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standard or has made findings of fact unsupported by substantial evidence in the record." Longworth v. Comm'r of Soc. Sec., 402 F.3d 591, 595 (6th Cir. 2005); Walters v. Comm'r of Soc. Sec., 127 F.3d 525, 528 (6th Cir. 1997).  This Court may not reverse the Commissioner's decision merely because it disagrees or because "there exists in the record substantial evidence to support a different conclusion." McClanahan v. Comm'r of Soc. Sec., 474 F.3d 830, 833 (6th Cir. 2006); Mullen v. Bowen, 800 F.2d 535, 545 (6th Cir. 1986) (*en banc* ). "The substantial evidence standard presupposes that there is a 'zone of choice' within which the Commissioner may proceed without interference from the courts." Felisky v. Bowen, 35 F.3d 1027, 1035 (6th Cir. 1994) (citations omitted), citing Mullen, 800 F.2d at 545. Wilkerson v. Commr of Soc. Sec., 278 F Supp 3d 956, 967 (ED Mich 2017).

The portions of the MJRR that the claimant finds objectionable are reviewed *de novo. See* 28 U.S.C. § 636(b)(1)(C); Herriman v. Apfel, 66 Soc. Sec. Reptr. Serv. 588, 2000 WL 246598, *1 (E.D.Mich.2000).

## V. DISCUSSION

The Court finds that the MJRR is an accurate, well-reasoned review of the record.  The MJRR is adopted in its entirety.  The Court need only address Vandyke's specific objections at this stage of the case, and articulate reasons for why Vandyke's objections are overruled.

A. Objection #1

Vandyke claims the ALJ did not give proper weight to her testimony about her medical condition, and to the calendars she submitted that purported to provide a record of her condition. She says the ALJ acted improperly when he said Vandyke's credibility was not at issue, but then held that her testimony was not consistent with the objective evidence in the record. In Vandyke's opinion, there is no difference between assessing her credibility and determining that her testimony was not consistent with the evidence. (ECF No. 20, PageID.591). Additionally, Vandyke believes the ALJ's comments about her credibility bind the ALJ to a finding that Vandyke's testimony and calendar outweigh the medical records.

Social Security Ruling 16-3p concerns treatment of a claimant's subjective complaints. The Sixth Circuit has described the thrust of SSR 16-3p as merely ending "the use of the word 'credibility' ... to 'clarify that the subjective symptoms evaluation is not an examination of an individual's character.' " Dooley v. Comm'r of Soc. Sec., 656 Fed. Appx. 113, 119 (6th Cir. 2016). Under SSR 16-3p, "an ALJ must focus on the consistency of an individual's statements about the intensity, persistence and limiting effects of symptoms, rather than credibility." Jidas v. Comm'r of Soc. Sec., No. 17-14198, 2019 WL 2252289, at *8 (E.D. Mich. Feb. 26, 2019).

There is a difference between Vandyke's use of "credibility" and how the ALJ properly used it. Indeed, assessing the claimant's testimony against other evidence in the record is precisely what the ALJ is supposed to do. Walters v. Comm'r of Soc. Sec., 127 F.3d 525, 531 (6th Cir. 1997) (an "ALJ is not required to accept a claimant's subjective complaints and may ... consider the credibility of a claimant when making a determination of disability."). Discounting credibility to a certain degree is appropriate

5

where, as here, an ALJ finds contradictions among the medical reports, claimant's testimony, and other evidence. See Bradley v. Secretary of Health and Human Servs., 862 F.2d 1224, 1227 (6th Cir.1988).

Regardless of how Vandyke interpreted the ALJ's comments about her credibility and what she believed that meant for the holding in this case, the ALJ did not make an improper credibility determination.[2]

Vandyke also argues the ALJ did not afford any weight to the calendars she submitted to corroborate her testimony. This too is incorrect. The ALJ discussed the calendars several times throughout his opinion and explains "the objective evidence does not reflect the frequency reported" in Vandyke's calendars. (ECF No. 702, PageID. 41).[3]

B.  Objection #2

Second, Vandyke argues that the MJ incorrectly concurred with the ALJ's decision to give Dr. Zappia's report little weight.  She says the ALJ "erroneously ignored" the fact that Dr. Zappia's treatment of Vandyke began within 6 ½ months of her

---

[2] The ALJ stated he had no reason not to believe Vandyke's testimony, but that he was required to go back and assess the objective medical evidence to see if it aligned with her testimony. The ALJ stated: "I don't doubt what she's telling me...[i]t's no longer up to me to determine whether you are credible and telling the truth…[w]hat's up to me to determine is whether the record supports the severity of the allegations you're describing." (ECF No. 7-2, PageID. 97).
[3] See also Id. at 39, 41.

date last insured, and that his findings are consistent with Vandyke's testimony and calendar corroboration of her symptoms prior to her date last insured.

A period of disability can only commence while an applicant is fully insured. 42 U.S.C. § 416(i)(2). A claimant must show that she was disabled prior to her date last insured and "evidence post-dating the date last insured is only relevant to the extent that it is probative of Plaintiff's health during the relevant time period." <u>Higgs v. Bowen</u>, 880 F.2d 860, 863 (6th Cir.1988). In order for evidence of the plaintiff's condition after the date last insured to be relevant to a disability decision, the evidence "must relate back to the claimant's condition prior to the expiration of her date last insured." <u>Wirth v. Comm'r of Soc. Sec.</u>, 87 F. App'x 478, 480 (6th Cir.2003). "A retrospective diagnosis relating back to the insured period may be considered proof of disability only if it is corroborated by evidence contemporaneous with the eligible period." <u>Wladysiak v. Comm'r of Soc. Sec.</u>, 2013 WL 2480665, at *11 (E.D. Mich. June 10, 2013) (citing <u>Lancaster v. Astrue</u>, 2009 WL 1851407, at *11 (M.D. Tenn. June 29, 2009).

Here, Dr. Zappia's report was not so corroborated. As the ALJ explained, the severity of Dr. Zappia's opinion is inconsistent with the evidence as a whole. For example, despite physical examination findings from the relevant time period that noted some abnormalities, reports from that time period noted "no true vertigo, normal right auricle, normal left auricle, grossly normal cranial nerves, steady gait, no nystagmus, normal head, eyes, ears, nose, and throat examination and healthy, alert and oriented appearance." (ECF No. 7-2, Page ID.42). The ALJ properly explained why Dr. Zappia's report was given little weight.

C. Objection #3

Vandyke's third objection is that the ALJ lacked authority to determine Vandyke's RFC without the opinion of a treating physician. However, the statue allows an ALJ, when formulating an RFC, to evaluate "all relevant medical and other evidence and conside[r] what weight to assign to treating, consultative, and examining physicians' opinions." 20 C.F.R. § 404.1545(a)(3). Eslinger v. Comm'r of Soc. Sec., 476 F. App'x 618, 621 (6th Cir. 2012). See also Mokbel-Aljahmi v. Comm'r of Soc. Sec., 732 F. App'x 395, 401–02 (6th Cir. 2018) ("We have previously rejected the argument that a residual functional capacity determination cannot be supported by substantial evidence unless a physician offers an opinion consistent with that of the ALJ."); See Shepard v. Comm'r of Soc. Sec., 705 Fed.Appx. 435, 442–43 (6th Cir. 2017); See Rudd v. Comm'r of Soc. Sec., 531 Fed.Appx. 719, 728 (6th Cir. 2013).

Vandyke cites Mathers v. Berryhill to suggest the ALJ should have rested his determination of an RFC on a treating physician's opinion. 2019 WL 1427555, at *3 (W.D. Ky. Mar. 29, 2019). Mathers, however, makes it clear this is a case by case determination—there is no requirement that an ALJ use a treating physician's opinion when determining an RFC, if his conclusion is substantially supported by the record as a whole.

Here, the ALJ's conclusion about Vandyke's RFC was substantially supported by the record as a whole. The ALJ analyzed Vandyke's September 2015 function report, Vandyke's testimony, the medical evidence of record, including reports from Dr. Linda Norrell, Vandyke's treatment plans, her follow-through on those treatment plans, and her report of continued symptoms through the relevant time period. (ECF. 7-2, Page. ID 39-42).

D. Objection #4

Last, Vandyke argues the ALJ erred by not finding that she had overcome the rebuttable presumption that she could engage in "past relevant work" under step four of the disability analysis because the ALJ did not consider her work accommodations. Vandyke testified that she had the following accommodations in previous jobs:

- Using the vacation policy to take a vacation for 2-3 days, or not come in until noon, or leave early.
- Using her boss's office to sit in the dark and quiet and sometimes lay down.
- Working from home "for a couple days."
- A schedule that allowed her to work odd hours ("I had to do all the lab work, so it didn't matter if I did it first thing in the morning or at night. Sometimes I wouldn't go in until 8 o'clock at night and I'd work until midnight, and then I would go in the next day."); (Laying down in her own office, or going home during the day if she was not feeling well, sleep, and return to work at 9:00pm, and work until 9:00pm- 1:00am).

(ECF No. 7-2, PageID.92-93). It is the claimant's burden at the fourth step of the evaluation to show an inability to return to any past relevant work. Allen v. Califano, 613 F.2d 139, 145 (6th Cir. 1980). To support a finding that a claimant can perform his or her past relevant work, the ALJ decision must explain why the claimant can perform the demands and duties of the past job as actually performed or as ordinarily required by employers throughout the national economy. D'Angelo v. Comm'r of Soc. Sec., 475 F. Supp. 2d 716, 723–24 (W.D. Mich. 2007), citing Studaway v. Sec'y of Health & Human Servs., 815 F.2d 1074, 1076 (6th Cir.1987). A claimant must show that the impairments are so severe that he/she is "unable to do his previous work." Studaway, 815 F.2d at 1076, quoting 42 U.S.C. § 423(d)(2)(A).

Accommodated work is a factor to consider in determining whether the claimant can do past relevant work. 20 C.F.R. § 404.1573(c) ("[i]f your work is done under

special conditions, we may find that it does not show that you have the ability to do substantial gainful activity").

20 C.F.R. § 404.1574(a),(b) defines earning levels that constitute substantial gainful activity for each calendar year. Evidence that a claimant earned in excess of these levels creates a rebuttable presumption that she engaged in substantial gainful activity. See Bell v. Comm'r of Soc. Sec., 105 F.3d 244, 246 (6th Cir.1996).

Vandyke does not dispute that her earnings surpassed this threshold. She says, however, that the accommodations she testified to should have been enough to rebut the presumption, or at least to warrant a remand so she may call additional witnesses. (ECF No. 20, PageID. 593-594).

Contrary to Vandyke's objection, the ALJ was within his discretion to determine Vandyke's testimony was not enough to overcome the presumption of past relevant work. In Blais v. Comm'r of Soc. Sec., the court found the claimant did not rebut the same presumption where she only testified to general accommodations she benefitted from during work, like laying down on a cot during the day. 2016 WL 1444348, at *7 (W.D. Mich. Apr. 13, 2016). The court concluded there was no evidence these accommodations were made specifically for claimant and were not available to other employees. Additionally, the claimant's testimony alone was not enough to rebut the presumption. Other courts have held the same. See, e.g., Dinkel v. Sec'y of Health & Human Servs., 910 F.2d 315, 319 (6th Cir.1990) (citing Anderson v. Heckler, 726 F.2d 455, 458 (8th Cir. 1984) (presumption not rebutted by Plaintiff's testimony, when such was not substantiated by testimony of her employers)). A general assertion that

Plaintiff's work was "accommodated" does not suffice. See Fisher v. Barnhart, 129 F. App'x 297, 302 (7th Cir. 2005).

The ALJ must find substantial evidence to support the conclusion that claimant can perform past relevant work. In making this finding, the ALJ may consider "[t]he services of vocational experts or vocational specialists, or other resources, such as the Dictionary of Occupational Titles ("DOT") and its companion volumes and supplements." 20 C.F.R. § 404.1565, § 404.1520(e). Further, "a vocational expert or specialist may offer relevant evidence within his or her expertise or knowledge concerning the physical and mental demands of a claimant's past relevant work, either as the claimant actually performed it or as generally performed in the national economy." Id.

Here, that is precisely what the ALJ used to support his determination that Vandyke is not disable at step four. Specifically, he concluded:

> The vocational expert testified that the DOT classifies this past work as laboratory tester (DOT 029.261-010), skilled SVP 6, generally performed at the light exertional level, and customer service coordinator (DOT 221.167-026)), skilled SVP 6, and generally performed at the light exertional level. In comparing the claimant's residual functional capacity with the physical and mental demands of this work, the undersigned finds that the claimant was able to perform the jobs of laboratory tester and customer service coordinator as generally performed. The vocational expert testified that an individual could perform these jobs within the parameters of the residual functional capacity. Pursuant to SSR 00-4p, the undersigned has determined the vocational expert's testimony is consistent with the information contained in the DOT, with supplementation provided by the expert's professional experience, as necessary.

(ECF No. 7-2, PageID.42-43).

## VI. CONCLUSION

For the reasons stated above, the MJRR is ADOPTED, Vandyke's objections are OVERRULED, Vandyke's motion for summary judgment is DENIED, the

11

Commissioner's motion for summary judgment is GRANTED, and the ALJ's decision denying benefits is AFFIRMED.

SO ORDERED.

S/Avern Cohn
AVERN COHN
UNITED STATES DISTRICT JUDGE

Dated: 9/24/2019
Detroit, Michigan